No. 25-2724

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

BRANDON PUGH,
       Appellant,
v.

BERKS COUNTY BOARD OF ELECTIONS,
       Appellee

**JOINT APPENDIX—VOLUME I OF II**

      **CORNERSTONE LAW FIRM, LLC**
      Joel A. Ready, Esquire
      Attorney ID No. 321966
      8500 Allentown Pike, Ste 3
      Blandon, PA 19510
      P (610) 926-7875
      F (484) 930-0054
      joel@cornerstonelaw.us

# TABLE OF CONTENTS

| Dist. Court ECF No. | Document | Pages |
|---|---|---|

## *Volume 1*

| | | |
|---|---|---|
| 23 | Notice of Appeal (Sept. 4, 2025) | 1 |
| 22 | Order Granting Motion to Dismiss (Sept. 3, 2025) | 2 |
| 23 | Memorandum Opinion (Sept. 3, 2025) | 3 to 15 |

## *Volume 2*

| | | |
|---|---|---|
| 1 | Complaint (June 26, 2025) | 16 to 23 |
| 7 | Motion for a Speedy Declaratory Judgment, Preliminary Injunction, and Other Relief (July 10, 2025) together with Exhibits | 24 to 84 |
| 8 | Order Granting Motion in Part (July 11, 2025) | 85 |
| 12 | Appellee's Motion to Dismiss (July 18, 2025) | 86 to 87 |
| 12-2 | Appellee's Brief in Support of Motion to Dismiss (July 18, 2025) | 88 to 104 |
| 15 | Amicus Curiae Brief of Al Schmidt and Pennsylvania Department of State (July 22, 2025) | 105 to 122 |
| 16 | Pugh's Brief in Opposition to Motion to Dismiss (Aug. 1, 2025) | 123 to 232 |
| 17 | Notice of Initial Pre-Trial Conference (Aug. 4, 2025) | 233 to 239 |
| 18 | Pugh's Motion for Clarification (Aug. 5, 2025) | 240 to 242 |
| 19 | Order Granting Motion for Clarification (Aug. 6, 2025) | 243 |
| 20 | Pugh's Emergency Motion for Expedited Ruling (Sept. 2, 2025) | 244 to 246 |

Docket Sheets (as of Sept. 5, 2025) 247 to 250

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON PUGH,<br><br>        Plaintiff,<br><br>v.<br><br>BERKS COUNTY BOARD OF ELECTIONS,<br><br>        Defendant. | Civil Action No. 5:25-CV-03267 |

## NOTICE OF APPEAL

Notice is given that Plaintiff in the above named case hereby appeals to the United States Court of Appeals for the Third Circuit from the September 3, 2025 final order, granting the motion to dismiss and closing the case.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: September 3, 2025      By:    /s/ Joel A. Ready
                                                    Joel A. Ready, Esquire
                                                    PA Attorney I.D. No. 321966
                                                    8500 Allentown Pike, Suite 3
                                                    Blandon, PA 19510
                                                    (610) 926-7875

**JA 001**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON PUGH : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 5:25-cv-03267-JMG |
| : | |
| BERKS COUNTY BOARD OF ELECTIONS, : | |
| Defendant. : | |
| : | |

### ORDER

**AND NOW**, this 3rd day of September, 2025, upon consideration of Defendant's Motion to Dismiss (ECF No. 12), Brief of Secretary Al Schmidt & Pennsylvania Department of State as Amici Curiae (ECF No. 15), and Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (ECF No. 16), **IT IS HEREBY ORDERED** that the Motion to Dismiss (ECF No. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is **DIRECTED** to mark this case **CLOSED**.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON PUGH | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | Civil No. 5:25-cv-03267-JMG |
| | : | |
| BERKS COUNTY BOARD OF ELECTIONS, | : | |
|     Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                         September 3, 2025

## I. OVERVIEW

Brandon Pugh mounted a write-in campaign in the 2025 Republican Primary for Mayor of Lyons Borough. Because he did not file a nomination petition with at least ten signatures, Section 1405 of the Pennsylvania Election Code required him to obtain ten write-in votes to be certified as winner of the election. But he won the primary with only five votes. So the Berks County Board of Elections refused to certify him as the nominee, leaving his name off the ballot in the upcoming 2025 General Election. He then sued the Berks County Board of Elections claiming that Section 1405, as applied to his write-in candidacy for the mayorship of Lyons Borough, violated the First and Fourteenth Amendments of the United States Constitution. For the reasons below, the Court disagrees.

## II. BACKGROUND

### a. Pennsylvania Election Law

The Pennsylvania Election Code governs the Commonwealth's elections. 25 Pa. Stat. §§ 2861-2883. Under the Election Code, a political party is a political group that received enough

1

**JA 003**

votes to meet a certain threshold at the most recent general election. § 2831(a).[1] Pennsylvania distinguishes between major and minor political parties. Major political parties are parties whose statewide registration is more than fifteen percent of the combined statewide registration for all statewide political parties at the close of registration for the immediately preceding November election. § 2872.2(a). Minor political parties, on the other hand, are those with less than fifteen percent registration. *Id*. The only major political parties in Pennsylvania are the Republican Party and the Democratic Party.

Candidates have two paths for appearing on the ballot in the general election: "(1) as the nominee of a major political party after winning the party's primary, or (2) as an independent candidate or the designated candidate of a minor political body after obtaining the requisite signatures on nomination papers." *De La Fuente v. Cortes*, 751 F. App'x 269, 270 n.1 (3d Cir. 2018) (citing §§ 2831(a), 2861-83, 2911). However, candidates cannot pursue both options in the same election cycle. *Id*. Since candidates of major parties must win their party's primary to get on the general election ballot, it is necessary to understand the rules regulating those elections as well.

Each candidate who wishes to get on the ballot for the primary election must complete and file a nomination petition. 25 Pa. Stat. § 2867. The nomination petition must contain a specific number of signatures. § 2872.1. For the office of mayor, candidates must secure ten signatures. § 2872.1(36). If a candidate on the primary ballot wins a plurality of votes, then they are added on the general election ballot as the party's nominee. § 2882. But the process of getting on the general

---

[1] "Any party or political body, one of whose candidates at the general election next preceding the primary polled in each of at least ten counties of the State not less than two per centum of the largest entire vote cast in each of said counties for any elected candidate, and polled a total vote in the State equal to at least two per centum of the largest entire vote cast in the State for any elected candidate, is hereby declared to be a political party within the State."

2

JA 004

election ballot as a major party's primary winner is different for candidates who do not submit a nomination petition and must otherwise conduct a write-in campaign.

Under long-standing Pennsylvania law, counties are "empowered" to count write-in votes, which the Election Code refers to as "irregular ballots," for any person, provided that the county can determine that the ballot was intended for that person. *Appeal of McCracken*, 88 A.2d 787, 789 (Pa. 1952); *see also Dayhoff v. Weaver*, 808 A.2d 1002, 1011 (Pa. Commw. Ct. 2002). Section 1405 of the Election Code provides that during primary elections, "the county board shall not certify the votes cast on irregular ballots for any person for a . . . local party office unless the total number of votes cast for said person is equal to or greater than the number of signatures required on a nomination petition for the particular office." 25 Pa. Stat. § 3155. So, because nomination petitions for the office of mayor require ten signatures, a mayoral write-in candidate needs at least ten write-in votes for the county to certify their write-in ballots and declare them as the winner of the primary election. §§ 2872.1(36), 3155.

### b. Facts and Procedural History

Pugh is a member of the Council of Lyons Borough. ECF No. 1 at ¶ 14. On May 20, 2025, the Berks County Board of Elections conducted a Municipal Primary Election, which included public offices in the Borough of Lyons for Mayor, Council, and Tax Collector. ¶ 15. No candidate filed nomination petitions for mayor in order to be placed on the Republican Primary ballot. Nonetheless, Pugh, running as a Republican, launched a write-in campaign for Mayor of Lyons Borough. ¶ 18. Unsurprisingly, he voted for himself. *Id*. But beyond his own vote, he received four write-in ballots from Republican voters. *Id*. These five write-in votes left him with the highest plurality of votes cast for mayor in the Republican Primary. *Id*.

Even though Pugh won the most votes in the 2025 Republican Primary, the fact that he did

not submit a nomination petition meant that he needed to receive at least ten write-in ballots to be listed on the 2025 General Election ballot as the Republican nominee for Mayor of Lyons Borough. ¶¶ 20-21 Pugh did not meet that ten-vote threshold. ¶ 23. So the Berks County Board of Elections declined to confirm him as the party's nominee in the upcoming November election. ¶ 27. The Board of Elections then certified the results of the 2025 Primary Election, and no one was listed as the Republican nominee for Lyons Borough Mayor. *Id.*

On May 26, 2025, after the Berks County Board of Elections refused to place Pugh's name on the 2025 General Election ballot, he brought this lawsuit, naming the Board of Elections as Defendant. ECF No. 1. He argues that Section 1405 is unconstitutional as-applied under the First and Fourteenth Amendments. He seeks declaratory and injunctive relief to be named as nominee of the Republican Party for Mayor of Lyons Borough in the 2025 General Election.

Two weeks after filing suit, Pugh filed a Motion for a Speedy Declaratory Judgment Hearing, for a Preliminary Injunction, and Other Relief. ECF No. 7. The Motion asked the Court for an expedited answer to his Complaint, for a speedy hearing of a declaratory-judgment action, and for a preliminary injunction. Due to the rapidly approaching November election, the Court granted Pugh's Motion in part, ordering the Berks County Board of Elections to respond to the Complaint by July 18, 2025. ECF No. 8.

On that day, the Berks County Board of Elections filed a Motion to Dismiss claiming that Section 1405's write-in vote requirement does not violate the First and Fourteenth Amendments. ECF No. 12. On July 22, 2025, Secretary of the Commonwealth Al Schmidt and the Pennsylvania Department of State submitted an amicus brief supporting the constitutionality of Section 1405. ECF No. 15. Pugh responded to the Motion to Dismiss on August 1, 2025, maintaining his position that Section 1405 is unconstitutional. ECF No. 16.

III.   LEGAL STANFDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013))

IV.   DISCUSSION

a.   The *Anderson-Burdick* Test Applies to Pugh's Constitutional Challenge

Before considering whether Section 1405 is constitutional, the Court must settle the parties' disagreement about which test applies to Pugh's challenge. The Berks County Board of Elections and the Commonwealth urge the Court to apply the sliding-cale approach for election regulations developed by two Supreme Court cases—*Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Pugh pushes back, arguing that strict scrutiny must be employed because the write-in vote requirement targets core political speech.

Our Court of Appeals decision in *Mazo v. New Jersey Sec'y of State*, 54 F.4th 124 (3d Cir.

5

2022), sheds light on this dispute. In that case, the Third Circuit acknowledged that "the line separating core political speech from the mechanics of the electoral process has proven difficult to ascertain." *Id*. at 132. Compounding this problem is the fact that the Supreme Court has never provided a "clear rule or set of criteria to distinguish between these two categories of election law." *Id*. at 137. To fill the gap, *Mazo* surveyed relevant Supreme Court and appellate cases and developed "criteria to help distinguish—along the spectrum of mechanics of the electoral process to pure political speech—which test is applicable." *Id*. at 132.

These criteria culminated in a two-part framework to determine the appropriate constitutional test. The first factor is that "the law must burden a relevant constitutional right, such as the right to vote or the First Amendment rights of free expression and association." *Id*. at 138. Under this principle, *Anderson-Burdick* is not limited to "First Amendment challenges" and instead extends beyond "laws that burden free association." *Id*. at 138, 140. The second one is that "the law must primarily regulate the mechanics of the electoral process, as opposed to core political speech." *Id*. at 138. In ascertaining the distinction between "pure political speech" and the mechanics of the electoral process, two additional factors to consider are: "the location and timing (the 'where and when') and the nature and character (the 'how and what') of the regulated speech." *Id*. at 142.

Applying *Mazo*'s two distinguishing factors here reveals that *Anderson-Burdick* applies to this case. First, the Court must decide whether Section 1405 burdens a relevant constitutional right. When a candidate does not file a nomination petition, Section 1405 prohibits a county board from certifying mail-in ballots for that candidate unless they receive a minimum number of write-in votes. 25 Pa. Stat. § 3155. Pugh says that this requirement prevented him from being certified as the winner of the Republican Primary in the Lyons Borough mayoral race, depriving him, and

6

those who voted for him, of their First and Fourteenth Amendment right to vote. ECF No. 16 at 4-5. Although "the Supreme Court has been skeptical of efforts to assert an unqualified right to speech via the ballot . . . it has nonetheless applied the *Anderson-Burdick* balancing test to laws that regulate ballot speech." *Mazo*, 54 F.4th at 143 (citing *Burdick*, 504 U.S. at 438; *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997)). Additionally, the Third Circuit has recognized that "[b]allot access is recognized as an important aspect of voting rights." *Rogers v. Corbett*, 468 F.3d 188, 194 (3d Cir. 2006) (citing *Bullock v. Carter*, 405 U.S. 134, 143, (1972)). Thus, Section 1405 burdens Pugh's First and Fourteenth Amendment rights, satisfying the first factor.

Second, the Court must consider whether Section 1405 primarily regulates a mechanic of the electoral process or core political speech. In Pugh's view, the write-in vote requirement implicates core political speech because a "political party's selection of a Primary nominee is [] core political speech relative to the right to associate." ECF No. 16 at 5 (citing *California Democratic Party v. Jones*, 530 U.S. 567, 568 (2000) ("[T]he moment of choosing the party's nominee is the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power.")). But, as the Commonwealth points out, courts have typically applied *Anderson-Burdick* to free association and ballot access claims under the First and Fourteenth Amendments. *Mazo*, 54 F.4th at 144-145; *see also Rogers*, 468 F.3d at 193-94. Further, the moment of voting for a candidate on a primary ballot "is a one-way communication confined to the electoral mechanic of the ballot." *Mazo*, 54 F.4th at 144-145 (citing *Burdick*, 504 U.S. at 438). Section 1405 then "affects only the mechanics of voting." *Eakin v. Adams Cnty. Bd. of Elections*, 775 F. Supp. 3d 903, 916 (W.D. Pa. 2025), *aff'd*, 2025 WL 2449056 (3d Cir. Aug. 26, 2025). So the second factor is also met and *Anderson-Burdick* is the proper test to employ in

this case.

### b. Section 1405 Is Constitutional Under the *Anderson-Burdick* Test

Satisfied that *Anderson-Burdick* is the appropriate standard, the Court must now apply the test to Pugh's constitutional attack on Section 1405. The application of *Anderson-Burdick* features a "two-track approach." *Mazo*, 54 F.4th at 145. At the first step, "we examine the nature and extent of the burden the date requirement imposes on First and Fourteenth Amendment protected rights." *Eakin*, 2025 WL 2449056, at *10. Strict scrutiny is proper only if "the law or regulation imposes a 'severe' burden." *Eakin*, 775 F. Supp. 3d at 916 (quoting *Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181, 205 (2008)). At the second step, "we 'must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Id.* at *13 (quoting *Anderson*, 460 U.S. at 789). Generally, "if a burden is not severe and imposes only reasonable, nondiscriminatory restrictions on constitutional rights, the State's important regulatory interests are generally sufficient to justify the restrictions." *Mazo*, 54 F.4th at 145-46 (internal quotation marks and citations omitted).

As applied to Pugh, the Court concludes that Section 1405 is constitutional because it does not impose a severe burden on his constitutional rights and the Commonwealth's interest in requiring candidates to show a minimum level of support is sufficient to justify the write-in vote requirement's minimal burden.

### i. Section 1405 Imposes Only a Minimal Burden on Pugh's First and Fourteenth Amendment Rights

Accepting that Section 1405 imposes some burden on Pugh's constitutional rights, the next question is to what extent. In making this determination, courts have no "litmus test for measuring the severity of a burden that a state [election] law imposes on a political party, an individual voter,

8

or a discrete class of voters." *Crawford*, 553 U.S. at 191. Nevertheless, the Court finds that the write-in vote requirement imposes only a minimal burden because the requirement is nondiscriminatory and leaves open alternatives for free association and ballot access.

In the context of elections, "laws discriminate by limiting political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status." *Eakin*, 775 F. Supp. 3d at 917 (internal quotation marks and citation omitted). These kinds of laws "impose severe burdens and will be especially difficult for the State to justify." *Mazo*, 54 F.4th at 146 (internal quotation marks and citation omitted). In cases involving "discrimination among candidates, parties, or voters, the Court's ballot access cases . . . focus on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process. The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the availability of political opportunity." *Id*. (internal quotation marks omitted) (quoting *Anderson*, 460 U.S. at 793). Conversely, "burdens that apply to all voters, parties, or candidates are less likely to be severe." *Id*. at 147.

Pugh argues that Section 1405 discriminates against primary candidates who conduct a write-in campaign. As discussed previously, to appear on a ballot, a candidate "must show a minimum of public support either through a nomination petition (s 912) or through the votes received at the primary (s 1405)." *Shankey v. Staisey*, 257 A.2d 897, 899 (Pa. 1969). For the office of mayor, ten signatures or write-in votes are required. 25 Pa. Stat. §§ 2872.1(36), 3155. Pugh says that this requirement discriminates against write-in candidates by requiring only write-in candidates to obtain a minimum number of write-in ballots for their votes to be certified and their names to appear on the general election ballot. ECF No. 16 at 2, 12-13. In other words, what Pugh challenges "is the discrepancy in treatment between those candidates who seek access to the

9

general election ballot through write-in votes and those who proceed by nomination papers." *Blair v. Hebl*, 498 F. Supp. 756, 761 (W.D. Wis. 1980), *aff'd sub nom. Philip J. Blair v. Francis J. Hebl*, 639 F.2d 786 (7th Cir. 1980).

Viewing Pennsylvania's primary election scheme holistically shows that Section 1405 is nondiscriminatory. In considering Section 1405's impact, the Court must focus "on the statute as part of a ballot access scheme in its totality" *Libertarian Party of N. Dakota v. Jaeger*, 659 F.3d 687, 693 (8th Cir. 2011). Under this broad lens, the statute "promotes 'equal' elections by requiring every candidate who desires to appear on the general electoral ballot to have satisfied the same condition—the show of support by a set number of people." *Shankey*, 257 A.2d at 899. Candidates can meet this requirement "by petition or by primary election victory, and what is important is not that ballots and petitions are equated but that the number of people behind each are equated." *Id*. Pugh sought to make a showing of public support by winning the 2025 Republican Primary as a write-in candidate, which meant he had to obtain ten write-in votes—the same number of signatures required by those filing a nomination petition. "Having made that choice voluntarily, [Pugh] ha[s] no basis on which to require the state to treat [him] in the same manner in which [he] would have been treated had [he] made the other choice." *Blair*, 498 F. Supp. at 762. Section 1405 therefore did not unfairly burden Pugh as a write-in candidate.

Additionally, Section 1405 leaves open an alternative avenue for appearing on the ballot. States "can lessen the burden imposed by an election law" by "provid[ing] alternative methods for the exercise of burdened rights." *Mazo*, 54 F.4th at 151. For example, in *Belitskus v. Pizzingrilli*, the Third Circuit reviewed Pennsylvania's scheme of requiring candidates to pay required filing fees *and* comply with signature requirements in order to have their names placed on the general election ballot. 343 F.3d 632, 636-37 (3d Cir. 2003). The court held that the scheme imposed a

10

severe burden on the rights of indigent candidates and their supporters by mandating "a mandatory filing fee" while failing "to provide an alternative means of ballot access, such as signature collection." *Id*. at 644. Section 1405, in contrast, provides precisely the alternative envisioned in *Belitskus*—a signature requirement pursuant to the nomination petition. 25 Pa. Stat. § 2872.1. And this requirement "fall[s] equally on all candidates." *Belitskus*, 343 F.3d at 646. Thus, because Pugh had the opportunity to collect ten signatures instead of obtaining ten write-in ballots, Section 1405 left open an alternative route.

Put simply, Pennsylvania has offered Pugh, and all other candidates, two "simple means of obtaining a place on the ballot." *Blair*, 498 F. Supp. at 762. A candidate may choose either option. But, "[i]f they choose not to use [a particular] means, they can not attribute the unfavorable consequences of that choice to the state." *Id*. So the Court concludes that Section 1405 imposes only a minimal burden on Pugh's constitutional rights and strict scrutiny under *Anderson-Burdick* is not necessary.

### ii. Pennsylvania's Interest in Ensuring Candidates Demonstrate a Minimum Level of Support is Sufficient to Justify Section 1405's Minimal Burden

In cases "[w]here a state election law imposes only minimal burdens, the State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Eakin*, 775 F. Supp. 3d at 917 (internal quotation marks and citation omitted). Since Section 1405 does not impose a severe burden, "a state must show relevant and legitimate interests that are sufficiently weighty to justify the limitation for the consent requirement to survive lesser scrutiny." *Mazo*, 54 F.4th at 153 (internal quotation marks and citations omitted). In weighing these interests, "our review is 'quite deferential,' *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir.

11

2008), and we will not require 'elaborate, empirical verification of the weightiness of the State's asserted justifications,' *Timmons*, 520 U.S. at 364." *Id*. (footnote omitted).

Here, Pennsylvania puts forth a key interest advanced by Section 1405: ensuring that candidates who appear on the ballot have demonstrated a minimum level of public support, which preserves the integrity and efficiency of elections. ECF No. 12 at 14; ECF No. 15 at 8. The law is clear that this an important and valid interest. *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986) (explaining that States have an "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot") (quoting *Anderson,* 460 U.S. at 788-789, n. 9); *see also Shankey*, 257 A.2d at 899 ("The statute, however, promotes 'equal' elections by requiring every candidate who desires to appear on the general electoral ballot to have satisfied the same condition—the show of support by a set number of people."); *Blair*, 498 F. Supp. at 760 (recognizing that States have an intertest in conditioning "access to the ballot upon a showing of a 'significant, measurable quantum of community support'") (quoting *American Party of Texas v. White*, 415 U.S. 767, 782 (1974)).

Pugh contends that Section 1405 does not actually further the Commonwealth's interest in candidates showing a minimum level of support because it kept him from being certified as the winner of the 2025 Republican Primary, and led to an empty general election ballot, even though he won 12.2% percent of votes cast with five write-in votes **(counting votes cast as opposed to registered voters)**. ECF No. 16 at 12-13. But the interest in exhibiting a minimum level of support does not depend on the avoidance of an empty ballot. After all, "[t]he right of a candidate to have his name on the ballot is not such an absolute one." *Shankey*, 257 A.2d at 899. Instead, the relevant inquiry is whether "access to the electorate [is] real, not 'merely theoretical.'" *American Party of Texas*, 415 U.S. at 783 (quoting *Jenness v. Fortson*, 403 U.S. 431, 439 (1971)). As discussed, the

Commonwealth has given candidates two choices to establish a minimum level of support—either the signatures in a nomination petition or the votes received in the primary. *Shankey*, 257 A.2d at 899. And, for the office of mayor, only ten signatures or mail-in votes are required. 25 Pa. Stat. §§ 2872.1(36), 3155. Given this modest threshold, the Court cannot agree that Section 1405 deprives candidates of meaningful access to the ballot and electorate.

Balancing the minimal burden imposed by Section 1405 against Pennsylvania's important interest in requiring candidates to show a bare minimum level of support before being included on the general election ballot, the Court concludes that the scales here tilt firmly in favor of the Commonwealth's electoral scheme. Said otherwise, Section 1405 is constitutional, both as written and as applied in this case.

## V.   CONCLUSION

The Constitution has placed on the States the critical and complicated responsibility of regulating the process of elections, while also ensuring that the constitutional rights of citizens and candidates are protected. The Court holds the Commonwealth's reliance on Section 1405 of Pennsylvania Election Code to meet this challenge does not unreasonably burden Plaintiff's constitutional rights. Therefore, stripped of its legal underpinning, Plaintiff's complaint cannot stand and Defendant's motion to dismiss is granted.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge