No. 25-2724

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

BRANDON PUGH,
                Appellant,
v.

BERKS COUNTY BOARD OF ELECTIONS,
                Appellee.

# APPELLANT'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION PENDING APPEAL AND TO APPELLEE'S CROSS-MOTION FOR SUMMARY ACTION

# **TABLE OF CONTENTS**

**REPLY ARGUMENT** ........................................................................................1

    I.   A Preliminary Injunction Preserves the Relative Positions of the Parties. ...............................................................................................1

    II.  Appellee Offers No Meaningful Rebuttal on the Merits and, While Expedited Action is Proper, Pugh Needs Injunctive Relief. ..................2

    III. Appellee Mischaracterizes the Irreparable Harm. ...............................3

    IV. Appellee's Claim to Hardship is Conjecture and has No Factual Application to Lyons Borough. .............................................................4

**CONCLUSION**..................................................................................................6

# TABLE OF AUTHORITIES

**Cases**

| | |
|---|---|
| AARP v. Trump, 145 S. Ct. 1364 (U.S. May 16, 2025) | 1 |
| Aderson v. Celebrezze, 460 U.S. 780 (1983) | 4 |
| De La Fuente v. Cortes, 751 F. App'x 269 (3d Cir. 2018) | 2 |
| Labrador v. Poe, 144 S. Ct. 921, 930 (U.S. Apr. 15, 2024) | 1 |

**Statutes**

| | |
|---|---|
| 25 P.S. § 2882 | 2 |
| 25 P.S. § 2911.1 | 9 |
| 25 P.S. § 3155 | 2 |
| 25 Pa.C.S. § 3508 | 4-5 |
| 52 U.S.C. § 20302 | 5 |

**Rules of Court**

| | |
|---|---|
| Fed. R. App. P. 8 | 1 |
| Local Rule 27.4 | 3 |

# REPLY ARGUMENT

**I.   A Preliminary Injunction Preserves the Relative Positions of the Parties.**

Appellee cites authority that the preliminary injunction is intended "to preserve the relative positions of the parties pending further proceedings." [ECF No. 9 at 7 (quoting AARP v. Trump, 145 S. Ct. 1364, 1368 (U.S. May 16, 2025)]. The "relative positions of the parties" means such relief that the controversy will not become moot during the pendency of the proceeding. "There is no good blanket answer to the question of what the status quo is." Labrador v. Poe, 144 S. Ct. 921, 930 (U.S. Apr. 15, 2024) (Kavanagh, *J.*, concurring, joined by Barrett, *J.*). In AARP, a legal challenge was made to President Trump's Administration to deport Venezuelan nationals who are allegedly members of Tren de Aragua. AARP, 145 S. Ct. at 1366. Deporting these persons would moot a class action that was brought in the district court, and so a preliminary injunction was granted, where the plaintiffs were able to satisfy the factors test. Id. at 1370.

Here, the status quo is giving effect to the May 20, 2025 Primary. Pugh won the Republican Primary for Mayor of Lyons Borough, but Appellee refuses to certify and include his name on the official ballot for the forthcoming Municipal Election. The status quo means giving effect to Pugh and the Republican electors who nominated him on May 20th. A preliminary injunction accomplishes that.

Under Fed. R. App. P. 8, Appellee gives no explanation why Pugh should

1

have moved for a preliminary injunction *a second time* before the district court, where the district court has already denied such relief and where Appellee admits that it wants to start printing the official ballot by September 17th. [ECF No. 7 at 5]. Both are grounds showing impracticality.

II. **Appellee Offers No Meaningful Rebuttal on the Merits and, While Expedited Action is Proper, Pugh Needs Injunctive Relief.**

Appellee recites that the "minimum level of support" rationale, applicable to third party and independent candidates, should be followed "even if it results in there being an empty ballot in the General Election." [ECF No. 14 at 13]. No court in our country has ever subscribed to that proposition before this case, which is nonresponsive to the caselaw we cited in our Emergency Motion showing why that is not a legitimate governmental interest. Appellee offers no meaningful rebuttal on the merits, which is why Pugh has a likelihood of success.

Appellee admits that one of the means of gaining ballot access is "winning the party's primary," De La Fuente v. Cortes, 751 F. App'x 269, 270 n.1 (3d Cir. 2018). Pugh did so here. Appellee seems to read into Section 1405 of the Election Code something it doesn't stand for. The text does not state that a write-in candidate failed to win the Primary but that "the county board *shall not certify* the votes cast," etc., if the write-in ballots do not reach a prescribed threshold. 25 P.S. § 3155 (emphasis added). Thus, by operation of 25 P.S. § 2882 (candidates "who receive a plurality of votes of their party electors [at Primary elections] shall be candidates of their

2

respective parties"), Pugh won the Republican Primary by having the highest plurality of votes cast. The two provisions are readily harmonized under the construction Pugh put forward: Section 1405 is a directory rule of administrative convenience that county boards of elections are not obligated to go searching for the write-in candidate in cases of small scatterings of write-in ballots. Section 1405 simply shifts the burden onto the write-in candidate to timely petition the county board. And Pugh did that here, too.

Appellee cross-moves the Court to summarily affirm the court below under Local Rule 27.4. Summary action under Local Rule 27.4 may be sought for reversing the judgment below as well. While Pugh graciously desires for the Court to act expeditiously, Pugh needs immediate injunctive relief as well as reversal. The court below took no action on Pugh's request for a preliminary injunction and, having denied the same, Pugh's Rule 65 motion merged into the final judgment and is properly before this Court. Thus, the Court may direct for a preliminary injunction to issue and reverse the court below.

### III. Appellee Mischaracterizes the Irreparable Harm.

The irreparable harm here is not the contention whether "Mr. Pugh will not be able to win" the Municipal Election. [ECF No. 14 at 13]. The irreparable harm is Pugh not having his name on the official ballot as the Republican nominee, where he was duly nominated in the November 20th Primary, which disenfranchises Pugh

and the Republican electors who nominated him as well as leaving the Republican Party without any nominee in the Municipal Election. Appellee therefore fails to distinguish controlling authority of <u>Aderson v. Celebrezze</u>, 460 U.S. 780, 799 n.26 (1983). However, where Appellee has raised the topic of winning elections, Appellee discloses *for the first time* that an independent candidate filed nomination papers for mayor. [ECF No. 15 n.3]. Thus, Pugh's irreparable harm is now significantly greater where an opponent gained ballot access and Pugh did not because Appellee violated his constitutional rights.

### IV. Appellee's Claim to Hardship is Conjecture and has No Factual Application to Lyons Borough.

Appellee makes generic assertions of hardships without any factual particularization to Lyons Borough and, under a balancing of the equities, cannot claim harm where it has the ability to ameliorate and chooses to do nothing. Without any particularization to Lyons, the claimed hardships here are conjecture because disclosing the details would work against the Appellee.

Appellee mentions that it wants to send ballots to the printer in order to serve mail-in and absentee voters. But Lyons Borough is just one election district, having 288 registered electors, and Appellee doesn't disclose how many ballots should be printed as applied to Lyons. How difficult can that be? Is that 15, 20, or 50 ballots? Electronic voting machines are utilized in Berks County for electors who offer to vote in-person. But if Appellee were to hypothetically print ballots for all 288

4

electors, would that consume exactly one or two hours of its time? No details are offered because that works against the Appellee as applied to a small electoral district like Lyons, being an inconsequential burden. Moreover, Appellee can send the official ballot to the printer for all the remaining election districts which are not a subject of this case.

Under the law, Appellee could have done one of two things here. Appellee could have reviewed its records to determine if any of the 288 registered voters were in the uniformed services and had applied for an absentee ballot or not. If there are none, then the September 20, 2025 deadline under 25 Pa.C.S. § 3508(a) to prepare the official ballot for voters in the uniformed services would have been inapplicable to Lyons Borough. Secondly, both Pennsylvania law and UOCAVA allow the Appellee to apply to the U.S. Under Secretary of Defense for a waiver of the September 20th deadline due to undue hardship. Id.: 52 U.S.C. § 20302(g); U.S. Under Secretary of Defense, Memorandum for Chief State Election Officials, DOD-UPR-0003 (Apr. 18, 2022). Appellee has not done that here.

Appellee's counsel makes the boilerplate assertion that any delay affects the Appellee's "ability to timely prepare and test the County's precinct voting machines in advance of the November election, because that testing requires a finalized ballot." [ECF No. 15, at 14]. No disclosure is made of how many *minutes* it takes to do that for the exactly three electronic machines that are placed in Lyons Borough.

5

Is that 45 minutes? One hour? Appellee won't say. Lyons Borough is a singular electoral district. The outcome of this case has no bearing on Appellee's ability to test electronic voting machines for the remaining election districts in Berks County.

Now, for the first time in this case, Appellee discloses that an independent candidate for mayor had filed nomination papers and qualified for the official ballot, and *might* object to Pugh's placement on the ballot. [ECF No. 7 at 15 n.3]. This is conjecture. Presumably, the independent candidate's objection, if any, would be identical to the Appellee's, being the same question the Court is now deciding. Moreover, that candidate could have intervened in this case if there was an objection, and Appellee could have notified that candidate about the pendency of this case and did not. Appellee sat on its hands.

Having violated Pugh's constitutional rights, Appellee asserts it can create delay in this case and then profit from the delay because it cannot include Pugh's name on the official ballot during the pendency of this appeal. That turns constitutional rights on their head without any remedy and fails a balancing of the equities here.

## **CONCLUSION**

**WHEREFORE**, based on the foregoing and as previously argued in the Emergency Motion, Plaintiff respectfully requests that the Honorable Court grant this Emergency Motion.

                        Respectfully submitted,

                        **CORNERSTONE LAW FIRM, LLC**

Dated: <u>September 11, 2025</u>    By:   /s/ Joel A. Ready
                                                Joel A. Ready, Esquire
                                                Attorney I.D. #321966
                                                8500 Allentown Pike, Suite 3
                                                Blandon, PA 19510
                                                (610) 926-7875
                                                joel@cornerstonelaw.us